Annunzio C. FERRARO, Plaintiff-Respondent,†

v.

Thomas P. KOELSCH and Kevin Jorgenson, Defendants, HYATT CORPORATION, d/b/a Hyatt Regency Milwaukee, Defendant-Appellant.

Court of Appeals

*No. 83–1205. Submitted on briefs April 25, 1984.— Decided May 25, 1984.*
(Also reported in 350 N.W.2d 735.)

† Petition to review granted.

For defendant-appellant Hyatt Regency Milwaukee the cause was submitted on the briefs of *Quarles & Brady* with *Matthew J. Flynn* and *David R. Cross* of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Joseph P. Balistrieri* and *Nancy J. Meissner* of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J. Following a jury trial for a wrongful discharge action, Hyatt Corporation, doing

business as Hyatt Regency of Milwaukee, appeals from a judgment awarding $28,000 to its former employee, Annunzio Ferraro.

Hyatt raises three points of error: (1) There is no credible evidence to support the jury finding that Hyatt and Ferraro agreed to be bound by an employees' handbook when he was hired; (2) there is no credible evidence to support the finding that Hyatt's discharge of Ferraro violated provisions of the employees' handbook; and (3) any alleged violation by Hyatt caused Ferraro no compensable injury. Persuaded that as a matter of law there is no credible evidence that Hyatt and Ferraro agreed to be bound by the handbook, we reverse and remand with instructions to dismiss Ferraro's complaint.

The record reveals the following relevant and undisputed facts: On May 25, 1980, Hyatt hired Ferraro as a security guard. In seeking this position with Hyatt, Ferraro signed a statement which provided in significant part that "I agree that my employment may be terminated by this Company at any time without liability for [lost wages] . . . ." On August 9, 1980, Ferraro signed a document acknowledging that he received and read the Hyatt Regency-Milwaukee Employees' Handbook.

One of Ferraro's duties was to patrol the restricted "employees only" parking lot. On February 25, 1981, he observed an unauthorized auto driven by Thomas Koelsch pull into the lot. After he told Koelsch to remove the car from the lot, an altercation occurred between the two which quickly became physical. Koelsch complained to Hyatt about Ferraro's conduct. An investigation resulted in Hyatt's terminating Ferraro for violating the employees' handbook provision relating to disrepectful conduct toward hotel guests. [1]

---

[1] *Just Causes For Dismissal*
The following rules are EXTREMELY IMPORTANT and should be reviewed carefully by each employee. The violation of

On April 2, 1982, Ferraro commenced a wrongful discharge action against Hyatt, which is the subject of this appeal, and a conspiracy and defamation action against Koelsch and a friend of Koelsch's which, after a trial to the jury, was dismissed. On the former claim the jury found that when Hyatt hired Ferraro, the parties agreed to be bound by the provisions of the employees' handbook governing termination of an employee; and Ferraro's discharge violated those provisions. The jury also assessed $28,000 in damages for lost wages stemming from the discharge.

In motions after verdict Hyatt unsuccessfully moved the trial court to find either that there was no credible evidence to support a finding that Ferraro's discharge violated provisions of the employees' handbook, or that there was no credible evidence to support the finding that the parties agreed to be bound by its provisions. Hyatt now appeals the judgment.

After a jury verdict is returned, any party may, by motion, challenge the sufficiency of the evidence to support the verdict or any answer thereof. *See* sec. 805.14, Stats. The cases setting forth and applying the standard for determining the sufficiency of the evidence are too commonplace to warrant mention. Suffice it to say that, if there is any credible evidence which, with any reasonable view, fairly admits an inference that supports a jury's finding, neither the trial court nor this court should change that finding. If there is any evidence

these rules will be considered sufficient cause for immediate dismissal.

. . . .

6. Disrespectful conduct. Gambling or fighting on hotel premises; coercion, intimidation or threats of any kind against guests, supervisors or fellow employees; using vulgarity or failing to give a high degree of service and courtesy to any guest; soliciting gratuities from guests or commenting in any way as to the amount of gratuity given.

other than mere conjecture or incredible evidence to support the verdict the standard has been met. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp.*, 96 Wis. 2d 314, 338, 291 N.W.2d 825, 837 (1980).

There is no dispute here over Ferraro's employment status. He was an at-will employee and therefore, Hyatt contends, could be terminated for any cause or for no cause. *See Yanta v. Montgomery Ward & Co.*, 66 Wis. 2d 53, 63 n. 16, 224 N.W.2d 389, 394 n. 16 (1974) ; *Forrer v. Sears, Roebuck & Co.*, 36 Wis. 2d 388, 393; 153 N.W.2d 587, 589–90 (1967). On the other hand, Ferraro argues that the contents of the employees' handbook imposed limitations, be they expressed or implied, on the termination rights of the at-will relationship. Ferraro's contention raises a question of first impression in Wisconsin.

In support of the argument of limitation by implication, Ferraro directs our attention to *Toussaint v. Blue Cross & Blue Shield*, 292 N.W.2d 880 (Mich. 1980). In relying on *Toussaint*, Ferraro invites us to continue the alteration of Wisconsin's at-will doctrine begun by our supreme court in *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 335 N.W.2d 834 (1983).[2] He urges us to adopt the law set forth in *Toussaint* to allow policy statements by an employer, or provisions of employees' handbooks, to give rise to enforceable contractual rights of employees without the parties' explicit mutual agreement.[3]

---

[2] In *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 335 N.W.2d 834 (1983), the court held that an at-will employee "has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id.* at 573, 335 N.W.2d at 840.

[3] *See also, Greene v. Howard Univ.*, 412 F.2d 1128 (D.C. Cir. 1969) ; *Pugh v. See's Candies, Inc.*, 171 Cal. Rptr. 917 (Cal. Ct.

Respectfully, we decline Ferraro's invitation to alter Wisconsin's at-will doctrine, for two reasons. Firstly, we conclude that Ferraro misapplies *Toussaint* to the facts of this case. Although *Toussaint* stands for the general proposition that employers' statements of policy in a personnel manual can give rise to enforceable employment rights without mutually expressed agreements, it specifically declares:

Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract. *Toussaint, supra,* at 890.

As indicated earlier in this opinion, Ferraro, as part of his job application, agreed that his employment could be terminated at any time without liability for wages. In *Novosel v. Sears, Roebuck & Co.,* 495 F. Supp. 344 (E.D. Mich. 1980), the court found that similar language in the plaintiff's job application precluded a cause of action based on *Toussaint.* ("The present case . . . falls squarely within an exception noted in the *Toussaint* holding." *Id.* at 346.) Thus, even under the *Toussaint*

---

App. 1981). In other jurisdictions courts have rejected personnel manuals or employees' handbooks as the basis for legal modifications of at-will employment relationships. *See Ruch v. Strawbridge & Clothier, Inc.,* 567 F. Supp. 1078, 1080–81 (E.D. Pa. 1983); *Rynar v. Ciba-Geigy Corp.,* 560 F. Supp. 619, 624–25 (N.D. Ill. 1983); *Heideck v. Kent Gen. Hosp., Inc.,* 446 A.2d 1095, 1097 (Del. 1982); *Muller v. Stromberg Carlson Corp.,* 427 So. 2d 266, 270 (Fla. Dist. Ct. App. 1983); *Shaw v. S.S. Kresge Co.,* 328 N.E.2d 775, 779 (Ind. App. 1975); *Johnson v. National Beef Packing Co.,* 551 P.2d 779, 782 (Kan. 1976); *Mau v. Omaha Nat'l Bank,* 299 N.W.2d 147, 150–51 (Neb. 1980); *Griffin v. Housing Auth.,* 303 S.E.2d 200, 201 (Ct. App. N.C. 1983); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex. Ct. App. 1982).

approach, the contents of the employees' handbook cannot by implication be imposed as contractually enforceable given Hyatt's *express* statement of company policy to the contrary in Ferraro's job application.

Additionally, it is uncontroverted that prior to commencing his employment Ferraro did not negotiate with Hyatt and did not rely on nor tender any further consideration in exchange for the promise that Hyatt would be bound by the contents of the employee handbook. Of additional significance, Hyatt did not give and Ferraro did not acknowledge receipt of the handbook until August 8, 1980, nearly three months after he commenced work. Therefore, any benefits that accrued to Ferraro through the handbook were mere gratuities or a unilateral expression of Hyatt's policies and procedures on a number of topics. *See, e.g., Heideck v. Kent General Hospital, Inc.,* 446 A.2d 1095, 1097 (Del. 1982) ; *Johnson v. National Beef Packing Co.,* 551 P.2d 779, 782 (Kan. 1976). That being the case, and with the express statement in the job application concerning Ferraro's lack of termination rights, the jury's verdict must be reversed for lack of any credible evidence of an expressed or implied contractual obligation to abide by the handbook.

Second, however salutary the *Toussaint* court's intention may be, it does call into apparent conflict certain socioeconomic policies versus long-recognized methods insuring certainty and stability in the workplace. Even were there a factual basis for an implied contract because of the employees' handbook, any further alteration of the "at will" doctrine for policy reasons is better left to our supreme court.

We therefore conclude as a matter of law that there is no credible evidence to sustain the jury finding that Hyatt and Ferraro agreed to be bound by the employees' handbook.

*By the Court.*—Judgment reversed and cause remanded with instructions.